```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
WALGREEN CO.,

                Plaintiff,
v.                                      Case No. 8:11-cv-812-T-33MAP

PREMIER PRODUCTS OF AMERICA,
INC., THOMAS CARLIN, and SCOT
MONETTE,
                Defendants.
_____/
```

**ORDER**

This cause is before the Court pursuant to Defendants' Motion to Dismiss (Doc. # 5), filed on May 25, 2011. Plaintiff filed a Response in Opposition to the Motion on June 17, 2011. (Doc. # 10). For the reasons that follow, the Court denies the Motion.

**I.   Factual Background and Procedural History**

On February 3, 2003, Plaintiff Walgreen Co. (an Illinois corporation) and Defendant Premier Products of America, Inc. (a Florida corporation) entered into an Electronic Data Interchange Trading Partner Agreement (hereafter, the "Trading Agreement"). (Doc. # 1 at ¶¶ 1, 2, 7). In addition, on July 28, 2008, Walgreens and Premier entered into another agreement, the "Electronic Payments Agreement." Id. at ¶ 10. Both Agreements (in addition to other exhibits) are attached to the complaint.

Walgreens alleges that Premier began submitting

electronic invoices to Walgreens on August 21, 2009, for H1N1 facemasks. (Doc. # 1 at ¶ 15). Pursuant to the Trading Agreement and the Electronic Payments Agreement, "those invoices were prepaid in full upon receipt." Id. In September and October, 2009, "multiple Walgreens stores across the country began to contact the Walgreens' accounts payable department to dispute the charges resulting from the Premier H1N1 facemask invoices." Id. at ¶ 16. With respect to such facemasks, some stores indicated that the facemasks were never actually delivered; other stores indicated that such facemasks were never even ordered. Id.

Walgreens conducted an audit regarding the facemasks, and it determined that Premier had been paid for products not actually delivered. Id. at ¶¶ 17-18. Accordingly, on October 22, 2009, Walgreens debited from Premier's electronic account a total of $889,944, representing the full value of all invoices Premier had submitted on August 21, 2009. Id. at ¶ 18.

On November 30, 2009, Premier, through Defendants Thomas Carlin and Scot Monette (presumably the officers of Premier), submitted documents to Walgreens that persuaded Walgreens that $251,155 worth of goods reflected in the August 21, 2009, invoices had actually been delivered. Id. at ¶ 19. Walgreens

2

credited this amount to Premier. Id.

In December 2009, and January 2010, a new controversy regarding Premier products arose. Id. at ¶ 23. Premier submitted invoices to Walgreens for H1N1 facemaks and for a product known as "Spaceballs." Id. Walgreens paid Premier $907,423.62. Id. However, after further investigation, Walgreens determined that Spaceballs "was a product that no Walgreens store ever ordered, and that Premier never actually delivered to any Walgreens store." Id.

Walgreens removed Premier from its Electronic Data Interchange Program system, and in April 2010, Walgreens "debited Premier's account for $1,305,008.41, reflecting the value of all of Premier's [Electronic Data Interchange] billing from August 24, 2009, through January 18, 2010." Id. at ¶ 28. However, from April through September 2010, Carlin and Monette sent documents to Walgreens that eventually convinced Walgreens to credit Premier's account in the amount of $854,505.88. Id. at ¶ 30. As it turns out, the documentation leading to the $854,505.88 credit was "false" and "fraudulent." Id. at ¶ 36. As explained by Walgreens: "Based upon the false documentation and misrepresentations made by Premier, by and through Monette and Carlin, it is clear that Premier made a conscious effort to wrongfully bill

3

Walgreens for products Walgreens did not order or were not shipped." Id. at ¶ 39. Furthermore, "[o]nce Walgreens uncovered Premier's initial layer of deception, Premier added another layer of deception by submitting invoices for a fake product (Spaceballs) and fabricating proof of delivery documentation." Id. "As of January 17, 2011, Premier's deceit had cost Walgreens $2,097,452.36, an amount paid by Walgreens for nothing." Id. at ¶ 41.

On April 14, 2011, Walgreens filed a complaint against Defendants containing the following counts: (1) Federal RICO against all Defendants; (2) State RICO against all Defendants; (3) civil theft against all Defendants; (4) violation of the Florida Deceptive and Unfair Trade Practices Act against all Defendants; (5) breach of contract against Premier; (6) fraudulent misrepresentation against all Defendants; (7) negligent misrepresentation against Premier; and (8) unjust enrichment against Premier. (Doc. # 1). On May 25, 2011, Defendants filed a Motion to Dismiss (Doc. # 5), which is ripe for the Court's review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth

4

Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

As a threshold matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside

the pleadings.[1]  "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)).

The incorporation by reference doctrine allows the Court to consider a document attached to the pleadings without converting a Rule 12(b) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged.  Dawley v. NF Sav. Corp. of Am., 6:07-cv-872-Orl-DAB, 2008 WL 4534263, at *1 (M.D. Fla. Oct. 6, 2008).

Both sides have drawn the Court's attention to various provisions of the Agreements, such Agreements are cental to Walgreens's claims, and the authenticity of the Agreements has not been challenged.  With this in mind, the Court will now address the merits of the Motion to Dismiss.

---

[1] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion . . ." Fed. R. Civ. P. 12(c).

6

### III. Analysis

#### A. RICO (counts 1 and 2)

The Motion to Dismiss challenges each complaint count. In response to the Motion, Walgreens concedes that it has missed the mark with respect to the two RICO counts asserted in the complaint and requests the opportunity to replead such complaint counts. The Court denies as moot the Motion to Dismiss with respect to the RICO counts in light of Walgreens's request to file an amended complaint in order to correct pleading deficiencies. Walgreens may file an amended complaint within ten days of the date of this Order.

#### B. Breach of Contract and Unjust Enrichment (counts 5 and 8)

Walgreens asserts its breach of contract and unjust enrichment counts against Premier only. Premier contends, as to the breach of contract count, that Walgreens "fails to allege the performance of all contractual conditions required of it, fails to identify the facts of the alleged breach, and fails to provide facts to support the existence of damages as a consequence thereof." (Doc. # 5 at 16).

In addition, Premier seeks dismissal of the unjust enrichment count because "where there is a specific contract

7

that governs the relationship of the parties, the doctrine of unjust enrichment has no application." Nesby v. Country Mut. Ins. Co., 805 N.E.2d 241, 243 (Ill. App. 5th 2004).[2]

The Court rejects Premier's contentions. "To state a colorable breach of contract claim under Illinois law, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." Fednav Int'l Ltd. v. Cont'l Ins. Co., 624 F.3d 834, 839 (7th Cir. 2010)(internal citations omitted). Furthermore, "Illinois law is clear: merely showing that a contract has been breached without demonstrating actual damages does not suffice to state a claim for breach of contract." Prima Tek II, LLC v. Klerk's Plastic Indus., 525 F.3d 533, 540-41 (7th Cir. 2008).

The complaint satisfies these Illinois pleading requirements. Neither party challenges the existence of the Agreements; Walgreens alleges substantial performance of the Agreements by its payments to Premier; Walgreens alleges that Premier breached the Agreements by accepting payment for goods never delivered; and Walgreens has specifically pled the

---

[2] The Agreements at issue state that they will be governed and interpreted in accordance with Illinois law.

8

resultant damages for which it is seeking recompense--money paid to Premier for goods never delivered to Walgreens. Accordingly, the Court denies the Motion with respect to count five, for breach of contract.[3]

The Court also denies the Motion to Dismiss with respect to count eight, for unjust enrichment. The Court agrees that Walgreens may not <u>recover</u> for both breach of contract and unjust enrichment in this case. <u>See, e.g.</u>, <u>La Throp v. Bell Fed. Sav. & Loan Assoc.</u>, 68 Ill. 2d 375, 391 (Ill. 1997)(damages for unjust enrichment are not awardable when there is a contract between the parties on the subject in dispute). However, Walgreens is free to <u>plead</u> both counts, in the alternative, in the complaint.

As stated in <u>Bailey v. Janssen Pharmaceutica, Inc.</u>, 288 Fed. App'x 597, 605 (11th Cir. 2008), "[T]he Federal Rules permit pleading in the alternative, even within one single count." <u>See also</u> Fed. R. Civ. P. 8(d)(2)("A party may set out

---

[3] In its response to the Motion, Walgreens states that it seeks leave to amend to assert a breach of contract claim against Carlin and/or Monette. (Doc. # 10 at 10, n. 5). The Court has determined that it is appropriate to grant Walgreens leave to amend the complaint with respect to the RICO counts. The Court determines that it is also appropriate to allow Walgreens to amend with respect to its breach of contract count if it believes that it has a basis for a breach of contract claim against such Defendants.

9

2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Pleading in the alternative is also appropriate under Illinois and Florida law. See, e.g., Seagraves, W. & L. R.R. v. Atchison T. & S.F. Ry., Case No. 93 C 1442, 1994 U.S. Dist. LEXIS 13728, at *5 (N.D. Ill. Sep. 22, 1994)("According to Illinois law, pleading in the alternative is appropriate and often necessary); Tambourine Comercio Int'l S.A. v. Solowsky, 312 Fed. App'x 263, 281 (11th Cir. 2009)(noting that pleading in the alternative is a "perfectly acceptable practice under Florida law.").

Thus, this Court determines that it is not appropriate to dismiss Walgreens's unjust enrichment count at this juncture.

### C. Civil Theft, Fraudulent Misrepresentation and Negligent Misrepresentation (counts 3, 6, and 7)

Defendants assert that the economic loss rule bars counts three, six, and seven for civil theft, fraudulent misrepresentation, and negligent misrepresentation.[4]  "The

---

[4] The Court applies Florida law in addressing these tort claims. See Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC, 510 F. Supp. 2d 1015, 1021 (S.D. Fla. 2007)("Claims arising in tort are not ordinarily controlled by a contractual

10

economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. v. Am. Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004).  In Florida, "the economic loss rule has been applied . . . when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising under the contract." Id.  The Florida Supreme Court has explained that "the prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id.

However, the economic loss rule does not bar causes of action based upon torts independent of the breach of contract. Id. at 537.  "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." Id. (internal citations omitted).

The Florida Supreme Court has described economic losses as "disappointed economic expectations." Casa Clara Condo.

---

choice of law provision.  Rather, they are decided according to the law of the forum state.").

Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244, 1246 (Fla. 1993). In the present case, Defendants' alleged conduct more than merely disappointed Walgreens's economic expectations. Assuming that the allegations of the complaint are true, Defendants engaged in several separate tortious actions in addition to merely breaching the contract. As explained by Walgreens, "Premier plainly breached [the Agreements] by accepting payment for products it never delivered, and this is why Walgreens has brought a claim for breach of contract." (Doc. # 10 at 5). Defendants engaged in separate tortious actions when they wrongfully retained the funds for the goods never delivered, created false records, and misrepresented to Walgreens that such records constituted valid documentation of goods shipped. Thus, this Court declines to bar the tort counts under the economic loss doctrine.

In addition to raising the economic loss doctrine, Defendants challenge the sufficiency of Walgreens's civil theft, fraudulent misrepresentation, and negligent misrepresentation counts. The Court will address the sufficiency of these complaint counts below.

### 1. **Civil Theft (count 3)**

Under Florida law, conversion is an unauthorized act that

deprives another of his property permanently or for an indefinite time. <u>Tambourine Comercio Int'l S.A.</u>, 312 Fed. App'x at 271. A conversion claim for money requires proof that the funds are specific and identifiable. <u>Id.</u> at 272. To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent. <u>Id.</u> at 275; <u>Gasparini v. Pordomingo</u>, 972 So.2d 1053, 1056 (Fla. 3d DCA 2008)("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather, that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of the contract.").

Here, Walgreens has alleged civil theft beyond a mere breach of the contract and has pled the necessary elements of a civil theft claim. Particularly, Walgreens has alleged that Defendants "knowingly and intentionally, with felonious intent, endeavored to obtain Walgreens' property in an effort to permanently deprive Walgreens' use of its property." (Doc. # 1 at ¶¶ 61-62). Walgreens also alleges, "Defendants did, with felonious intent, obtain millions of dollars from Walgreens." <u>Id.</u> at ¶ 63. Accordingly, the Court denies the Motion to Dismiss as to count three, for civil theft.

### 2. **Fraudulent Misrepresentation (count 6) and Negligent Misrepresentation (count 7)**

The same reasoning applies to the fraudulent misrepresentation and negligent misrepresentation counts alleged in counts six and seven. At this stage of the pleadings, the Court is not willing to bar Walgreens from going forward with its misrepresentation claims. By its pleading, Walgreens has sufficiently alleged misrepresentations beyond and distinct from the breach of contract claim. In addition, Walgreens has pled each and every element required for stating such claims under the Federal Rules and Twombly. Accordingly, the Court denies the Motion to Dismiss as to counts six and seven.

### D. **Florida Deceptive and Unfair Trade Practices Act (count 4)**

In count four, Walgreens (an Illinois company) seeks redress against Defendants pursuant to Florida's Deceptive and Unfair Trade Practices Act. Defendants seek dismissal of this count, arguing that only an in-state consumer can pursue a claim under FDUTPA. There is a divergence within Florida law regarding whether the protections of the FDUTPA extend to out-

of-state consumers. Compare OCE Printing Sys. USA v. Mailers Data Serv., Inc., 760 So.2d 1037, 1042 (Fla. 2d DCA 2000)("Other states can protect their own residents . . . . [O]nly in-state consumers can pursue a valid claim under the [Florida Deceptive and] Unfair Trade [Practices] Act.") with Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla., 761 So.2d 1256 , 1262 (Fla. 3d DCA 2000) ("[W]here the allegations . . . reflect that the offending conduct occurred entirely within this state, we can discern no legislative intent for the Department to be precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state.").[5]

Under either interpretation of Florida law, however, Walgreens has standing to pursue its FDUTPA claim. Walgreens, as a corporation legally licensed to do business in Florida, is technically an "in-state" consumer with all of the same

---

[5] Federal courts interpreting the FDUTPA have not prohibited FDUTPA cases asserted against Florida Defendants when such Defendants have caused harm outside of the state of Florida. See e.g. Brueggemann v. NCOA Select, Inc., Case 08-80606, 2009 U.S. Dist. LEXIS 55296, at *20 (S.D. Fla. June 30, 2009)(allowing Brueggemann, a California resident, to pursue a FDUTPA case against a Florida company that solicited consumers outside the state of Florida with deceptive advertisements).

15

rights and protections as a domestic corporation. See <u>Wheeling Steel Corp. v. Glander</u>, 337 U.S. 562, 571 (1949) ("after a state has chosen to domesticate foreign corporations, the adopted corporations are entitled to equal protection with the state's own corporate progeny"); <u>see also</u> Fla. Stat. § 607.1505(2)(a foreign corporation, lawfully doing business in Florida, is entitled to the same protections as domestic corporations).

Therefore, Walgreens, as a corporation licensed to do business in Florida, is a consumer under the Act and has standing to sue under the Act.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss (Doc. # 5) is **DENIED**.

(2) Plaintiff is permitted to file an amended complaint, as specified above, within ten days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>14th</u> day of October, 2011.

                                      VIRGINIA M. HERNANDEZ COVINGTON
                                          UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record