UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WALGREEN CO.,

        Plaintiff,

v.                               Case No. 8:11-cv-812-T-33MAP

PREMIER PRODUCTS OF AMERICA,
INC., THOMAS CARLIN, and SCOT
MONETTE,

        Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Defendants' Motion to Dismiss Amended Complaint (Doc. # 24), filed on November 11, 2011. Plaintiff filed a Response in Opposition to the Motion on November 21, 2011. (Doc. # 25). For the reasons that follow, the Court denies the Motion.

**I. Factual Background and Procedural History**

On February 3, 2003, Plaintiff Walgreen Co. (an Illinois corporation) and Defendant Premier Products of America, Inc. (a Florida corporation) entered into an Electronic Data Interchange Trading Partner Agreement (hereafter, the "Trading Agreement"). (Doc. # 23 at ¶¶ 1, 2, 7). Subsequently, on July 28, 2008, Walgreens and Premier entered into another agreement, the "Electronic Payments Agreement." Id. at ¶ 10. Both Agreements (in addition to other exhibits) are attached to the Amended Complaint.

Walgreens alleges that Premier began submitting electronic invoices to Walgreens on August 21, 2009, for H1N1 facemasks. (Doc. # 23 at ¶ 15). Pursuant to the Trading Agreement and the Electronic Payments Agreement, "those invoices were prepaid in full upon receipt." Id. In September and October 2009, "multiple Walgreens stores across the country began to contact the Walgreens' accounts payable department to dispute the charges resulting from the Premier H1N1 facemask invoices." Id. at ¶ 16. With respect to such facemasks, some stores indicated that the facemasks were never actually delivered; other stores indicated that such facemasks were never even ordered. Id.

Walgreens conducted an audit regarding the facemasks and determined that Premier had been paid for products not actually delivered. Id. at ¶¶ 17-18. Accordingly, on October 22, 2009, Walgreens debited from Premier's electronic account a total of $889,944, representing the full value of all invoices Premier had submitted on August 21, 2009. Id. at ¶ 18.

On November 30, 2009, Premier, through Defendants Thomas Carlin and Scot Monette (presumably the officers of Premier), submitted documents to Walgreens that persuaded Walgreens that $251,155 worth of goods reflected in the August 21, 2009,

invoices had actually been delivered. Id. at ¶ 19. Walgreens credited this amount to Premier. Id.

In December 2009, and January 2010, a new controversy regarding Premier products arose. Id. at ¶ 23. Premier submitted invoices to Walgreens for H1N1 facemasks and for a product known as "Spaceballs." Id. Walgreens paid Premier $907,423.62. Id. However, after further investigation, Walgreens determined that Spaceballs "was a product that no Walgreens store ever ordered, and that Premier never actually delivered to any Walgreens store." Id.

Walgreens removed Premier from its Electronic Data Interchange Program system and, in April 2010, Walgreens "debited Premier's account for $1,305,008.41, reflecting the value of all of Premier's [Electronic Data Interchange] billing from August 24, 2009, through January 18, 2010." Id. at ¶ 28. However, from April through September 2010, Carlin and Monette sent documents to Walgreens that eventually convinced Walgreens to credit Premier's account in the amount of $854,505.88. Id. at ¶ 30. As it turns out, the documentation leading to the $854,505.88 credit was "false" and "fraudulent." Id. at ¶ 36. As explained by Walgreens: "Based upon the false documentation and misrepresentations made by Premier, by and through Monette and Carlin, it is

3

clear that Premier made a conscious effort to wrongfully bill Walgreens for products Walgreens did not order or were not shipped." Id. at ¶ 39. Furthermore, "[o]nce Walgreens uncovered Premier's initial layer of deception, Premier added another layer of deception by submitting invoices for a fake product (Spaceballs) and fabricating proof of delivery documentation." Id. "As of January 17, 2011, Premier's deceit had cost Walgreens $2,097,452.36, an amount paid by Walgreens for nothing." Id. at ¶ 41.

> Walgreens submits:
>
> For more than a year before Walgreens uncovered their fraud and ceased doing business with Carlin, Monette and Premier, Carlin and Monette, through Premier, submitted more than 1,500 false invoices and/or false proofs of delivery to Walgreens headquarters in Illinois and dozens of Walgreens stores in multiple states across the country in their scheme to obtain unlawful monies from Walgreens.

Id. at ¶ 48. Walgreens also alleges that Carlin and Monette undertook such actions in furtherance of a RICO enterprise. Id. at ¶ 39.

On April 14, 2011, Walgreens filed its Complaint against Defendants and on October 24, 2011, filed its Amended Complaint (Doc. # 23). The Amended Complaint contains the following counts: (1) federal RICO against all Defendants; (2) state RICO against all Defendants; (3) civil theft against all

4

Defendants; (4) violation of the Florida Deceptive and Unfair Trade Practices Act against all Defendants; (5) breach of contract against Premier; (6) fraudulent misrepresentation against all Defendants; (7) negligent misrepresentation against Premier; and (8) unjust enrichment against Premier.

Defendants seek dismissal of counts one and two, which allege violation of federal and state RICO statutes.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

As a threshold matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[1] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)).

### III. Analysis

#### A. RICO Pleading Requirements

Defendants seek an order dismissing Walgreens' federal

---

[1] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion . . ." Fed. R. Civ. P. 12(c).

6

and state RICO claims. At the outset, the Court notes, "[b]ecause Florida's RICO statute is patterned after the federal law, the analysis is the same for both." Smart Sci. Labs., Inc. v. Promotional Mktg. Servs., Inc., No. 8:07-cv-1554-T-24EAJ, 2008 U.S. Dist. LEXIS 118270, at *9-10 (M.D. Fla. June 27, 2008); Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1263-64 (11th Cir. 2004).

The four elements of a RICO claim are: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Smart Sci. Labs. Inc., 2008 U.S. Dist. LEXIS 118270, at *11 (citing Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282-83 (11th Cir. 2006).

A number of courts have expounded upon and elucidated these elements. In Jackson, 372 F.3d at 1264, the court explained, "A RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." The court further remarked that a successful "pattern of racketeering activity" charges that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." Id.

(emphasis in original).[2]

The Supreme Court has explained what "criminal conduct of a continuing nature" means:

> "Continuity" is both a closed-and-open-ended concept, referring either to a closed period of repeated conduct, or to part conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

H.J., Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 241-42 (1989)(emphasis in original).

In "open-ended" conspiracies, a RICO plaintiff can meet his burden by showing "either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Id. In addition, a successful RICO plaintiff must

---

[2] "The most important factor that defines an enterprise 'is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation.'" Smart Sci. Labs. Inc., 2008 U.S. Dist. LEXIS 118270, at *15 (quoting Goldin Indus., Inc., 219 F.3d at 1275).

8

establish: "(1) the requisite injury to 'business or property' and (2) that such injury was 'by reason of' the substantive RICO violation." Mohawk, 465 F.3d at 1282-83.

**B.   RICO Analysis**

Since Walgreens alleges that the RICO predicate acts were accomplished by mail and wire fraud, the particularity requirements of Rule 9(b), Fed.R.Civ.P., are implicated.  The Eleventh Circuit has commented that Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral or fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)(internal citations and quotation marks omitted).  Rule 9(b) is satisfied only if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Id. (internal citations and quotation marks omitted).

Here, the Amended Complaint contains allegations regarding the "who, what, when, where, and how" of the alleged

fraud as required by Rule 9(b). Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). The Court will now address Defendants' arguments that the RICO counts must be dismissed because Walgreens failed to allege (1) a continuing threat of racketeering activity; (2) reasonable reliance; and (3) distinctness of the RICO enterprise from the RICO defendant.

1. **Continuity**

Defendants assert that the Amended Complaint does not allege criminal conduct of a continuing nature. In Jackson, the court noted that, in the Eleventh Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." 372 F.3d at 1266.[3] However, both parties seem to agree that the Amended Complaint alleges that the "scheme" lasted for one year and one month: from August 2009, to September 2010. (Doc. # 24 at 4; Doc. # 25 at 4). Accordingly, the Motion to Dismiss is denied as to this issue.

2. **Reasonable Reliance**

Defendants assert that Walgreens' Amended Complaint is deficient because Walgreens failed to allege "reasonable

---

[3] It appears that both sides agree that the Amended Complaint alleges closed-ended, rather than open-ended, racketeering activity.

reliance." Defendants rely solely on C.S.I.R. Enters. v. Sebrite Agency, 214 F. Supp. 1276, 1284 (M.D. Fla. 2002), which states: In RICO cases based upon mail or wire fraud, "the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme."

Walgreens, however, correctly argues that the Supreme Court has set forth a different standard: "we reject [the] contention that the 'common-law meaning' rule dictates that reliance by the plaintiff is an element of a RICO claim predicated on a violation of the mail fraud statute." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 653 (2008). The Court further noted, "Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation. And the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim." Id.; see also Magnifico v. Villanueva, 783 F. Supp. 2d 1217, 1228 (S.D. Fla. 2011)("Plaintiffs' reliance on the defendants' fraudulent misrepresentations or statements is not required.").

Accordingly, the Motion to Dismiss is denied as to this issue.

### 3. Distinctness

Generally, "the RICO enterprise must be distinct from the RICO defendant person. RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or part of the person. In short, a plaintiff can sue under RICO an individual or corporate employee who engages in a pattern of racketeering activity through his or her corporate enterprise." Smart Sci. Labs. Inc., 2008 U.S. Dist. LEXIS 118270, at *15 (internal citations omitted). The Supreme Court has explained, "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the [RICO] statute that requires more 'separateness' than that." Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001). The Court further remarked, "A corporate employee who conducts the corporation's affairs through an unlawful RICO pattern of activity uses that corporation as a 'vehicle' whether he is, or is not, its sole owner." Id. at 165.

The allegations of the Amended Complaint, which the Court assumes are true for the purposes of Rule 12(b)(6), allege distinct RICO persons, Monette and Carlin, who are separate

from Premier, the RICO entity. As explained in Smart Sci. Labs. Inc., 2008 U.S. Dist. LEXIS 118270, at *15, "a plaintiff can sue under RICO an individual corporate employee who engages in a pattern of racketeering activity through his or her corporate enterprise."

In addition, the present factual scenario is factually distinguishable from Palmas Y Bambu, S.A. v. E.I. DuPont de Nemours & Co., 881 So. 2d 565, 577 (Fla. 3d DCA 2004). There, the court entered a directed verdict in favor of DuPont as to plaintiff's RICO count because "no distinction was demonstrated between Dupont as the 'person' and DuPont the 'enterprise.'" Based upon the facts as alleged in the Amended Complaint, wherein Walgreens alleges separate RICO persons and a separate RICO entity, the Court denies the Motion to Dismiss as to the issue of distinctness.

The Court also notes that "distinctness is a fact-intensive inquiry that is not driven solely by formal legal relationships." Lockheed Martin Corp. v. Boeing Co., 314 F. Supp. 2d 1198, 1212 (M.D. Fla. 2004). The Court determines that further analysis of the distinctness requirements may be raised by Defendants, if appropriate, at the summary judgment

13

stage.[4]

In sum, at this preliminary stage, the Court determines that Walgreens has satisfied the heightened pleading requirements for RICO, and the Court denies the Motion to Dismiss.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss Amended Complaint (Doc. # 24) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of February, 2012.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

[4] The Court also rejects Defendants' similarly fact-intense argument that the Amended Complaint alleges only "a single scheme against a single victim," which is not actionable under the RICO statutes. That argument, and related arguments pursuant to Fla. Stat. § 772.102(4), require further briefing and factual discussion before they can be addressed. These arguments are better suited for the summary judgment stage. When confined to the four corners of the Amended Complaint, the Court determines that the RICO counts have been sufficiently pled.